THE HEIRS OF ISAAC TICHNER VS. THE STATE OF TEXAS — Appeal from Travis County.

In suits to obtain original headright certificates, brought under the 11th section of the "act supplementary to an act to detect fraudulent land certificates," etc., the claims must be proven in the manner provided by the land law of December 14, 1837.

Under the 10th section of the general provisions of the constitution, and the 12th section of the land law of 1837, the presence of the family in the country at the date of the declaration of independence was necessary to support a claim for a league and labor of land, except in the cases of officers and soldiers whose families arrived in the country before the 1st day of January, 1840.

This was a suit instituted by the appellants at the spring term, 1847, of Travis county district court to obtain a headright certificate for one league and labor of land to which they claimed to be entitled as heirs of Isaac Tichner, deceased.

On the trial of the case the following facts were found by the jury, to wit: "That Isaac Tichner emigrated to Texas in December, 1835; that he brought a company of troops with him, and entered into the army of Texas with his company in January, 1836; that he remained in the service under [270] command of Col. Fannin, until he was taken prisoner at the battle of Coletto on the 19th of March, 1836, by the Mexicans; that the said Isaac Tichner was at that time a married man and the head of a family, and that the plaintiffs were his heirs; that his said family did not emigrate with him to Texas, but remained in Montgomery, Alabama, where they have since continued to reside." Upon the law arising on these facts, the jury prayed the judgment of the court, which was accordingly rendered, decreeing to the plaintiffs one-third of a league of land only, instead of a league and labor. Whereupon this appeal was taken.

*Webb* and *Duval*, for appellants.

The 10th section of the "general provisions" of the constitution of the late republic of Texas secured to the deceased intestate the amount of land for which his heirs have sued. It was proven that he was residing in Texas on the day of the declaration of independence, and was the "head of a family."

Possessing these qualifications, he was, in the terms of the section referred to, "a citizen" of the republic, and, in right of his being a married man, "entitled to one league and labor of land." It was contended in the court below, on behalf of the state, that no one was "the head of a family," within the meaning .of the constitutional provision referred to, unless his family was then with him in Texas; and in proof of this the 30th section of the "general land law" (Laws of Texas, vol. 2, p. 72) was cited, which provides "That all officers and soldiers who engaged in the service of Texas·previous to the 1st of March, 1837, whose families are now here, or may arrive within twelve months from the date of their discharges, shall be entitled to the same quantity of land as they would have been entitled to if their families had emigrated to the country with them."

It is plain that this enactment was intended to apply to [271] such officers and soldiers only as had arrived in the country *after the declaration of independence.* Those who had arrived previous were already provided for by the constitution itself, which recognized them as "citizens," and gave to such as were "heads of families" a league and labor, and such as were single men one-third of a league of land. It is still more evident that the above enactment has no application to such officers and soldiers as had previously *died* in the service. The language employed shows that it was designed to apply to such only as were then alive — those who had received "discharges." The deceased was killed on the 27th of March, 1836, and if that is regarded as the date of his "discharge," the twelve months allowed to his family to reach the republic had already expired when the enactment was passed.

The right of the deceased to a league and labor of land was, under the constitution, a *vested right* in him and his heirs, and could not be impaired by subsequent legislation.

The gift or grant made to him by the constitution must, like all such donations, be taken most strongly against the grantor, and in case the words expressing the grant are of doubtful construction, such construction must be made as will favor the grantee.    Co. Litt. 146, 344; Bac. Abr. vol. 3, p. 393.

*Harris*, Attorney General, for appellee.
No brief furnished the reporters.

Mr. Chief Justice HEMPHILL delivered the opinion of the court.

The deceased intestate was a captain in the Georgia battalion, was taken prisoner at the battle of the Coletto on the 19th of March, 1836, and was murdered at the massacre of Fannin's command on the 27th of March, 1836. The action is instituted by his heirs still residing in the United States, to recover a certificate for a league and labor of land as the [272] head-right of the said deceased; and it is brought in the district court by virtue of the 11th section of the act supplementary to an act to detect fraudulent land certificates. See 5th vol. Laws, p. 173. This section requires the applicants to comply with all the formalities prescribed by the act. This direction is very indefinite, but it has always been held to require an applicant for an original certificate to comply with the requisites prescribed in cases of application for the re-establishment of certificates not recommended by the commissioners appointed under the "act to detect fraudulent land certificates." The claim is required, then, to be proven in the manner provided by the land law of December 14, 1837.

The jurisdiction of the court is limited in the investigation of claims by the provisions of the law of 1837, and the allowance or rejection of the claim must depend on the establishment or otherwise of the facts prescribed by that law. We have often decided that under the provisions of the constitution referred to in the brief of the appellee, and under the 12th section of the law of 1837, the presence of the family in the country at the date of the declaration of independence was necessary to support a claim for a league and labor of land, except in the cases of officers and soldiers who, if their families arrive in the country before the first day of January, 1840, were entitled to the same quantity of land that they would have been if their families had emigrated to the country with them. The provision cited from the constitution shows, we think, very clearly that resident families were in the contem-

plation of the members of the convention, and not those domiciliated on a foreign soil, and who, as in the present case, might never remove to the republic.

It is true that the joint resolution of the 24th of May, 1838, authorizing the grant of a certificate of a headright to the heirs of the deceased, on a certificate from the secretary of war, does not require the facts to be established as required by the law of 1837, but this certificate without [273] other proof (which when required must be in accordance with the law of 1837) would not authorize a grant of more than one-third of a league as a headright, as it could furnish no evidence of the marriage of the deceased, or of his being the head of the family. What may be the political obligation of the government arising from the decree of the convention of the 17th of March, 1836, it is unnecessary to inquire.

The compliance with such obligations belongs exclusively to the political department of the government, and if wholly neglected, it is not within the competency of a judicial tribunal to afford redress.

But on fair principles of construction the heirs of the deceased might well be held, even under that decree, to be entitled to not more than one-third of a league of land, as they could under that decree claim what would have been due him under the law of colonization, and tested by these laws he would, unless his family had been in the country, be entitled to only one-third of a league of land.

But whatever may be the construction of the decree, the law of 1837, in conformity with which we are exercising jurisdiction, does not authorize a grant of a league and labor of land to a claimant or to his heirs, whose family was not at the declaration of independence in the country, nor in the case of an officer or soldier whose family had not arrived before the first day of January, 1840.

Let the judgment of the court below be affirmed.